UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY GUSTAVO SOARES BATISTA (A-Number: 245-339-401),<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY,<br><br>Respondent. | Case No.  1:26-cv-1520-DAD-JDP<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Stanley Gustavo Soares Batista entered the United States in 2023 and was re-detained by ICE in 2025.  Petitioner, proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without a bond hearing violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

In October 2023, petitioner entered the United States, was detained by immigration officials, and then was released on his own recognizance.  ECF No. 8-1 at 3.  Petitioner thereafter applied for asylum.  *Id*.

In December 2025, petitioner was arrested and charged with assault with a dangerous weapon in violation of Massachusetts General Laws Chapter 265, § 15B(b).  *See* ECF No. 16-1 at

1

2. That charge remains pending. Upon his release from local authorities in December 2025, petitioner was re-detained by ICE. ECF No. 8-1 at 2. Since his re-detention, petitioner has not been afforded a bond hearing. ECF No. 16 at 2.

**Procedural History**

On February 23, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus. ECF No. 1. On March 17, 2026, respondent filed an answer. ECF No. 8. Petitioner thereafter filed a reply. ECF No. 9. On April 1, 2026, I granted petitioner's motion for the appointment of counsel, and counsel appeared one week later. *See* ECF Nos. 10 & 12. On April 21, 2026, petitioner filed a supplemental reply.[1] ECF No. 16. The petition and answer are deemed submitted.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates the Fifth Amendment. ECF No. 1 ¶¶ 46-49. Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1226(c). ECF No. 8 at 3. Confusingly, respondent later argues that this court is

---

[1] Petitioner concurrently filed a motion for preliminary injunction, which respondent has opposed. *See* ECF Nos. 17 & 20. In light of my recommendation that the petition be granted, I recommend that petitioner's motion for preliminary injunction, ECF No. 17, be denied as moot.

2

"not the correct forum" to adjudicate whether petitioner is subject to section 1226(c) because petitioner "has not exhausted his administrative remedy to contest his mandatory detention." *See* ECF No. 20 at 2-3. Respondent's argument is misplaced because the answer to the petition is predicated on the position that section 1226(c) applies to petitioner; consequently, it would be fundamentally unfair to bar petitioner from contesting that position. *See* ECF No. 8 at 2-6. Moreover, petitioner's exhaustion is excused because the "pursuit of administrative remedies would be a futile gesture." *See Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1117 (D. Idaho 2025) (holding that administrative remedies would be futile because the Board of Immigration Appeals has "clearly staked its position" that all noncitizens present in the United States "without being admitted or paroled" are subject to mandatory detention) (collecting cases). Accordingly, I begin by determining whether section 1226(c) applies to petitioner, and then I analyze his due process claim.

Under section 1226(c), the attorney general "shall take into custody" any noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."[2] 8 U.S.C. § 1226(c)(1)(E)(ii). The term "serious bodily injury" has the meaning given such term "in the jurisdiction in which the acts occurred." *Id*. § 1226(c)(2). In Massachusetts—where petitioner was arrested and charged—a "serious bodily injury" means a "bodily injury which results in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death." *See* Mass. Gen. Laws ch. 265, §§ 13A, 13K, 15A, 15D.

Here, as noted, petitioner was charged with assault with a dangerous weapon under Massachusetts General Laws Chapter 265, § 15B(b).[3] *See* ECF No. 16-1 at 2. There is no

___

[2] The statute also requires that the noncitizen be "inadmissible" under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7). 8 U.S.C. § 1226(c)(1)(E)(i). Because petitioner is "present in the United States without being admitted or paroled," he is "inadmissible" under § 1182(a)(6)(A). *See* 8 U.S.C. § 1182(a)(6)(A)(i).

[3] Respondent initially characterized the charge as "assault and battery with a dangerous weapon." ECF No. 8 at 1-2. However, after petitioner pointed out that the charge is only for

3

information about the incident in the record other than petitioner's allegation that the charge stems from "a verbal argument with his neighbor." *See* ECF No. 17 at 5.  The charging section penalizes anyone who, "by means of a dangerous weapon, commits an assault upon another." Mass. General Laws ch. 265, § 15B(b).  Under Massachusetts law, an assault either consists of "an attempted battery" or "an immediately threatened battery." *Com. v. Gorassi*, 432 Mass. 244, 247 (2000).

There is no allegation or evidence that petitioner's alleged crime resulted in a bodily injury, much less a serious one.  Instead, respondent argues that the charge subjects petitioner to mandatory detention under section 1226(c) because of Massachusetts' definition of serious bodily injury: "bodily injury which results in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or *a substantial risk of death*."  *See* Mass. Gen. Laws ch. 265, § 15A(d) (emphasis added).  Respondent argues that "[t]he First Circuit has held: 'the harm threatened by an assault is far more violent than offensive touching when committed with a weapon that is designed to produce or **used in a way that is capable of producing serious bodily harm or death**.'"  ECF No. 20 at 2 (quoting *Collins v. United States*, 354 F. Supp. 3d 105, 115 (D. Mass. 2019)) (emphasis added by respondent).  Accordingly, respondent's argument seems to be that although petitioner's charge did not result in bodily injury, his alleged crime nonetheless carried "a substantial risk of death" such that it constitutes a "serious bodily injury" under Massachusetts law.  This argument is unpersuasive because "serious bodily injury" is defined as a "*bodily injury which results in* . . . a substantial risk of death."  *See* Mass. Gen. Laws ch. 265, § 15A(d) (emphasis added).  An act that did not result in a bodily injury—even if it did carry "a substantial risk of death"—cannot constitute a "serious bodily injury" in Massachusetts.

Thus, because there is no indication that petitioner's alleged crime resulted in a "serious bodily injury to another person," I find that petitioner is not subject to mandatory detention under section 1226(c).  *See* 8 U.S.C. § 1226(c)(1)(E)(ii).  I next turn to petitioner's due process claim,

---

assault—as opposed to assault *and* battery—respondent began characterizing the offense as "assault with a dangerous weapon."  *See* ECF No. 16 at 1 n.1; ECF No. 17 at 5; ECF No. 20 at 1. To be sure, court records demonstrate that petitioner has been charged with assault with a dangerous weapon.  *See* ECF No. 16-1 at 2.

though it bears mention that even if I found that petitioner were subject to mandatory detention under section 1226(c), I still would proceed to his due process claim to consider whether he is entitled to relief.  *See Shoimov v. Chestnut*, No. 1:25-cv-1603 CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.").

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty."  *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their

continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in October 2023. ECF No. 8-1 at 3. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for over two years. Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the two years between his release and re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention indicates that it has not

7

taken sufficient efforts to prevent an erroneous deprivation of his liberty.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  Respondent has not provided any information about the additional burden that would fall on them as a result of being required to provide a bond hearing.  *See* ECF No. 8.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner seeks immediate release or, alternatively, a bond hearing.  ECF No. 1 at 17.  Respondent does not address this issue.  *See* ECF No. 8.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  The Court has also observed, however, that "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).  "Indeed, common-law habeas corpus was, above all, an adaptable remedy.  Its precise application and scope changed depending upon the circumstances." *Id.*; *see also Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (The federal habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody.").

Before re-detaining petitioner, due process would ordinarily require a pre-deprivation hearing.  *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.").  However, "there may be situations that urgently require arrest, in which a

8

prompt post-deprivation hearing is appropriate." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). For example, in *Martinez Hernandez v. Andrews*, the court held that, where the petitioner had allegedly violated his parole, a post-deprivation hearing was appropriate because it was "at least arguable that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." No. 1:25-cv-1035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025).

Here, upon petitioner's arrest, local authorities transported him to a courthouse, where he was released but then immediately re-detained by ICE because an administrative warrant for his arrest had already been issued. *See* ECF No. 8-1 at 2; ECF No. 8-3. Under these circumstances, I find that it is "at least arguable that providing [petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *See Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *12. Accordingly, the present record does not establish that petitioner was constitutionally entitled to a pre-deprivation hearing.

Due process still required, however, that petitioner be afforded a "prompt post-deprivation hearing." *See Guillermo M.R.*, 791 F. Supp. 3d at 1036. Petitioner, as noted, has not been provided such a hearing. Accordingly, I find that the appropriate remedy is a bond hearing. *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *15-16 (E.D. Cal. Oct. 16, 2025)).

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner (A-Number: 245-339-401) be provided a bond hearing within seven days of the date of the court's order. At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondent be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4. Petitioner's motion for preliminary injunction, ECF No. 17, be DENIED as moot.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 27, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

10